No. 6405.

STATE OF LOUISIANA EX REL. T. J. DURANT VS. THE BOARD OF LIQUIDATORS.

The act of the Legislature No. 81 of the year 1872, which abolished the free-school fund, and which ordered the bonds composing that fund to be sold by the Auditor and Treasurer of the State, is unconstitutional, and no property in any of those bonds has been acquired by any purchaser of the bonds, who may have bought them at a sale made under said act No. 81.

APPEAL from the Superior District Court, parish of Orleans. *Lynch,* J. *Hornor & Benedict,* for relator and appellant. *H. C. Dibble,* Acting Attorney General, for appellee.

The opinion of the court was delivered by SPENCER, J.

Relator alleges that he is the owner of three " free-school- und bonds," issued under act (No. 182) of the nineteenth of March, 1857, and of twelve coupons due thereon: that he acquired said bonds by purchase from the State, at a sale thereof made by the Auditor and Treasurer under section six of act No. 81 of 1872, and paid for them with a three-thousand-dollar " certificate of indebtedness," issued to him for professional services, and duly registered as provided in said act; that on the twenty-fourth of January, 1874, the funding act was passed, providing for the funding of the outstanding obligations of the State; that said three bonds and coupons are part of the obligations of the State fundable under said act; that the said bonds are of the class designated as doubtful by the supplemental funding bill, act No. 11 of 1875, page 110; that the Board of Liquidation refuses to fund them; wherefore he prays for a mandamus, which was directed to issue *nisi.*

The Funding Board, as cause why said bonds should not be funded for, answer:

First—Generally deny relator's allegations.

Second—Say the bonds sued upon are not valid obligations of the State in the hands of relator; that the act No. 81 of 1872 is, so far as it authorized the reissuance of the said bonds, void.

Third—That the State received no valid or sufficient consideration for said bonds, and that the relator is the first holder from the State with full notice.

Upon these issues the case was tried. The court discharged the rule and refused the mandamus, and the relator prosecutes this appeal.

The testimony shows that the relator purchased these bonds at the sale of the " free-school-fund " bonds, made by the Auditor and Treasurer under section six of act No. 81 of 1872, and paid for them by a " certificate of indebtedness " for three thousand dollars, issued for professional services rendered the State at Washington, and duly registered according to the first section of said act.

The counsel for the board insist in their brief that this suit is premature, since the supplemental funding act declares that the board shall not fund these bonds until a final decree of the Supreme Court has established their validity and legality; that this decree of the Supreme Court is a condition precedent to the relator's right to proceed by mandamus; that the relator should have first brought a regular suit against the board and established the validity of his bonds, and then have proceeded by mandamus if the board refused to fund them.

Had this objection been pleaded in limine there might have been more force in it. But the defendants chose to go to trial on an answer which put the validity and fundability of the bonds in relator's hands at issue. The court must try the issues presented, whether in the petition or answer. The law abhors litigation and multiplicity of actions. As an original proposition we see no good reason why the question of validity of the bonds should not be cumulated with a proceeding for mandamus. It would at least save costs, diminish litigation, and hasten results.

But there is a more serious defense interposed to relator's demands. The board alleges that the act No. 81 of 1872, directing the sale of the free-school bonds is void, as violative of the act of Congress of the fifteenth of February, 1843, and of article 139 of the constitution of the State. The act of Congress above referred to provides (see act of February 15, 1843, 5 Stat. at Large, page 600):

" That the Legislatures of Louisiana and certain other States be, and they are hereby, authorized to provide by law for the sale and conveyance in fee simple of all or any part of the lands heretofore reserved and appropriated by Congress for the use of schools within said States, and to invest the money arising from the sale thereof in some productive fund, the proceeds of which shall be forever applied, under the

direction of said Legislatures, to the use and support of schools within the several townships and districts of country for which they were originally reserved and set apart, and for no other use or purpose whatever; provided said land or any part thereof shall in no wise be sold without the consent of the inhabitants of such township or district, to be obtained in such manner as the Legisla~ures of said States shall by law direct; and in the apportionment of the proceeds of said fund, each township and district shall be entitled to such part thereof, and no more, as shall have accrued from the sum or sums of money arising from the sale of the school lands belonging to such township or district."

Section two authorizes Legislatures to protect school lands from waste and for leasing them when deemed inexpedient to sell.

Section three provides that "in case the proceeds accruing to any township or district from said fund shall be insufficient for the support of schools therein, the Legislature is to invest the same in *the most secure and productive manner*, until the fund becomes adequate to the permanent maintenance and support of schools within the same," etc.

The Legislature, by act No. 321 of 1855, created the "free-school fund," and declared that the same "shall be held by the State as a loan, and shall be and remain a perpetual fund to be called the 'free-school fund.'" The act by its thirty-second, thirty-third, and thirty-fourth sections provides for the sale of sixteenth school sections, and for paying the proceeds into the treasury, and for paying thereon to the townships six per cent interest according to the act of Congress. Section thirty-six provides that "all moneys received or to be received as proceeds of sales of sixteenth sections and the interest thereon shall be placed to the credit of the townships and the interest be paid out as the people thereof direct."

The act of the Legislature No. 182 of 1857 further provided by its first and second sections for the ascertainment of the debt due by the State to the free-school fund, and directs the issue of bonds of the State therefor by the Governor, payable in forty years, and bearing six per cent interest, payable semi-annually, said bonds to be of the denomination of one thousand dollars. The fourth section pledges certain other bonds and the interest to accumulate thereon as a special trust fund for redemption of these school-fund bonds. Section eight declares that the assets of this free-school fund "shall be a perpetual fund in trust, never to be diverted to any other purpose than that for which it was and is pledged. The interest accruing on said bonds shall *first* be applied to the payment of the annual interest due to the various townships in the State, to be ascertained as provided in section nine of this act. The balance of the interest collected shall be placed in the current school fund and applied to current school expenses." Section nine provides for ascertaining the amount due the several townships, and the mode of

calculating and paying the interest thereon. Section twelve provides. that all the bonds belonging to the "free-school fund," or which may hereafter belong to it, shall be delivered to the Secretary of State and State Treasurer, and be by them held *in joint custody*, and by them delivered to their successors, who shall execute duplicate receipts therefor, one of which shall be delivered to the Governor and filed in the executive office.

The constitution of 1868, article 139, provides that the assets of this "free-school fund [following almost exactly the language of the act of 1855 (No. 321) creating the fund] shall be held by the State as a loan, and shall *be and remain a perpetual fund*, on which the State shall pay an annual interest of six per cent, which interest  *  *  *   shall be applied to the support of public schools, and this appropriation shall *remain inviolate."*

Does the act No. 81 of 1872 violate this provision of the constitution and the provisions of the act of Congress of the fifteenth of February, 1843, as carried into effect by acts Nos. 321 of 1855 and 182 of 1857, of the Legislature?

The relator contends that there is no force in the objection raised under article 139 of the constitution, that that article in no way forbids the sale of the particular bonds mentioned in act No. 81 of 1872. That article must be construed with reference to the act of Congress and previous acts of the Legislature above referred to. The act of Congress directs the Legislature to invest the proceeds of these school lands in some "productive fund, the proceeds of which *shall be forever* applied, under the direction of the Legislature, to the use and support of schools and for no other purpose."

The act of the Legislature of 1855 organized the free-school fund and provided for the sale of the school lands and the payment of the proceeds into the treasury, and declared it "shall be and remain a perpetual fund to be called the free-school fund."

The act of 1857 provided for the ascertainment of the amount due by the State to this fund, and directed the issue of State bonds therefor by the Governor, payable in forty years, with six per cent interest, payable semi-annually. The fourth section pledges certain bonds for the redemption of these free-school bonds, and the eighth section declares that the assets of this free-school fund "shall be a *perpetual fund in trust*, never to be diverted to any other purpose," and "that the interest on these bonds shall first be applied to the payment of the annual interest due to the various townships in the State." Finally, section twelve provides special depositaries for these bonds, to wit: the Secretary of State and the Treasurer, who are to hold them "in joint custody." Now, the constitution repeating, in almost the identical words, the act of 1855, creat-

State of Louisiana ex rel. Durant vs. the Board of Liquidators.

ing this "free-school fund," provides that the assets composing said fund "shall be held by the State as a loan, and shall *be and remain a perpetual fund* * * * the interest of which shall be applied to the support of public schools, and this appropriation *shall be inviolate.*"

Does the act No. 81 of 1872 violate this act of Congress and the constitution of the State? The act of Congress directs an investment in some "productive fund." The Legislatures of 1855 and 1857 carried into effect the act of Congress by creating and organizing the free-school fund. The constitution in substance says this fund "*shall be and remain a perpetual fund.*" The act 81 of 1872 by its third section "abolishes" this free-school fund, and transfers its assets to a special fund created by it for "redemption of the floating debt." By its sixth section it directs the Auditor and Treasurer (the Secretary of State and Treasurer being the lawful joint custodians) to sell the bonds belonging to this fund to the highest bidder for currency or State warrants or certificates of indebtedness.

In our opinion this act 81 of 1872 not only violates the act of Congress and the legislation thereunder and the constitution, but was an act of spoliation, intended and designed to deplete the treasury of every available asset or fund in it. These school bonds were supposed to be more salable than Auditor's warrants and certificates of indebtedness with which the State had been deluged; hence some device to get hold of them had to be concocted, and act 81 was the result. Some of these bonds were, it appears, not even negotiable; hence act 81 provides and directs that in such case the Auditor should indorse them with words to the effect that they were hereafter payable to bearer.

The interest of these school-fund bonds was pledged for the payment of the interest annually due to the several townships for school lands sold. The third section of act 81, directing the Auditor to annually estimate what would have been due to the free-school fund, if the same had not been abolished, and to levy and collect a tax to pay interest thereon, is not a compliance with the act of Congress, nor does it relieve the measure of the character we have already given it. We regard act 81 as violating the faith and solemn pledges of the State, that the State *quoad* those bonds was and is a mere trustee, and that the acts of Congress and the legislative action thereunder created obligations on the part of the State, in favor of the inhabitants of the various townships, and other beneficiaries, which the State is not at liberty "to abolish" at its pleasure.

We therefore regard the sale of these "free-school bonds" held by the relator to be null and void, and that he acquired no title to them by virtue of the pretended sale under section six of said act 81.

The judgment of the lower court discharging the rule *nisi*, and refusing the mandamus is affirmed, with costs in both courts.